The Fourth District of Illinois does now convene. General Robert J. Skagman presiding. Thank you, Mr. Miller. You may be seated. Our first case up this afternoon is 4-250-399. Armstead v. Sangamon County Collector Let me ask counsel for the parent. Please identify yourself, sir. Joel Benoit. Thank you. Is it pronounced Benoit? Yes, but it's Benoit. But a long time ago they started saying Benoit. Well, whatever. You're entitled to it. I can't actually go by Benoit. Benoit. In New York City. Okay. That's what I'll try. And on behalf of the appellee. Your Honor, my name is Bruce Feeman. Thank you, Mr. Feeman. Mr. Benoit, you may proceed on behalf of the appellant. May it please the court. I'm the civil division chief for the Sangamon County State's Attorney's Office. I'm here on behalf of the appellant. In this lawsuit, the plaintiff's claim that the defendant violated the Illinois Constitution's Uniformity Clause, which provides, except as otherwise provided in this section, taxes upon real property shall be levied uniformly by valuation. So the focus of the Uniformity Clause, then, is to ensure that real property taxes are levied uniformly by valuation, by fair market value. To determine whether the Uniformity Clause has been violated, two things must be known regarding the tax challenger's property and comparable properties, their assessed values and their fair market values. The properties the tax challenger identifies as comparables must be located in the same taxing district and similar in proximity and characteristics as to the challenger's property. Is that really only one variable? Because we know that assessed value is a third of the fair market value? Assessed value is attempting to... It wheels off of the market value calculation. So sometimes it's kind of confusing. The case is there's assessed value as determined by the assessor. And that value is presumed correct. Then there's assessed values in the cases where... Well, actually, the assessed value always stays the same. It's taken from the tax record. But the other values, the assessor, in order to get to the assessed value, must make a determined fair market value. And then divided by three, that's the assessed value. So that's the whole issue here. Did the assessor figure out, determine correctly the fair market value and have a correct assessor? Was there any evidence presented in this case, or was it all by paper, deposition, whatever? All the evidence was documentary.  Also, we don't see many cases like this, so I have some clarification which would be helpful. Yes. I suppose one of the questions is this. We're talking about land at Lake Springfield, some of which is being used for residential purposes and others being used for boat club, calling it that for the moment. Correct. And if I understand correctly, the primary argument the plaintiff's brought was that the land was being assessed differently if it's residential as opposed to boat club. Right. Well, those are different uses, of course, and the boat club leases are substantially more restrictive, I think, as well. But I suppose the question is to what extent can the taxing authorities tax things differently based upon the use of the property involved? Well, I think that the use of the property always weighs into how it's assessed, in part because the use depends, you know, how is it improved? These are improved, you know, the lake clubs are improved, the big club houses, big marinas, swimming pools, big parking lots. The lots are much bigger. It's different. It's sort of like even the plaintiff's expert, if you read his CV, he talks about all the different types of things that he may appraise. There's different approaches to each one depending upon use. And one of the things on the comparability issue is, which I think is a fatal flaw in the plaintiff's case here, is these are not comparable. They're so different in use and size and everything else, and the leases, as you mentioned, and I mentioned that all in the briefs, that they're just not comparable. So because they're different uses, they can be taxed differently? Well, they can't be taxed, you know, All the property is supposed to be assessed at one-third of fair market value, all this property at issue, and all of it is taxed at the same rate. So the only real issue here is, what is the fair market value of these different properties? Is the fair market value then gauged differently based upon how the property is used? I think it can be, yes. Is that what happened in this case? In this case, what they have is, it's been undisputed, there's two formulas that the assessors used to value the non-farmland portions of all the property at issue here, and the formula they chose was dependent upon the use of land. The plaintiff's position is this resulted in unfair tax burden. So the plaintiff's position is that the use of land is an improper consideration? Yes. In determining fair market value? Yes. Did they argue that to the trial judge? Did I, excuse me? Did they argue that position to the trial judge? Yes, yes, and I think that, I mean, they went so far, they were just, they went to the point where, okay, we're going to imagine all these properties as vacant, and all, you know, all basically identical, and then we're just going to apply this square foot rate to come up with some kind of valuation. In addition, even vacant, these particular lots are different in size, the amount of shoreline, various other characteristics. Yes. Is that correct? Yes, and I, well, I'm not going to spend, I'm going to say, given Lex Brinkman, I think it's about 90 years old, I wouldn't be surprised if these were set up as lake club properties for that very reason. And, you know, if you look at, and this is all in the record, the plaintiff's lot, residential lots, are just what you would expect, you know, narrow front on the lake, long sides. I mean, and these are just so much different. I assume the residential lots differ from each other in some respect, unless they're totally underdeveloped. Yes. And so why wouldn't the same rate apply to the undeveloped, or the land portion of the residential lots as to these? It does. So all the residential lots. The same as we would apply to the commercial. Because they're not comparable. They're so different. Now, to tell you the truth, there is no. Get back to my question. The residential lots are all different, and yet we can use the same valuation approach to those. The commercial lots are different from some of the, why cannot we use the same valuation approach? My position would be that the residential lots are very, very comparable to one another. They're rectangular lots, generally. They have small frontage on the lake. I think nine of them have. What does the shape value, how does the shape affect the lot value? Whether it's rectangular or square? I don't know. There was no evidence put on that. I just suspect that, you know, a larger lot that could be used for a club would be different than a lot that could only be used for a house. But doesn't that come out of the wash in the square foot? There's no evidence to that. And that's the whole problem with the case. They never put on any fair market value evidence. And one of the cases that we cited that is very similar to this is the soap case that was the golf course case. We call that. And it's very similar. And the tax challenger came in and said, look, I'm charged at 4,000 acres, and these people are assessed at 1,500 to 2,500. You know, this isn't right. And the court's like, but there's no fair market value evidence to tell us what is the correct number. How are you harmed? And this all goes back to those ratios. I understand that would be kind of a proof issue. But just conceptually, are some of the lots, some of the residential lots lakefront and some not? No, they're all lakefront, yes. Okay. The question of the size of the lot and also the question of the shape of the lot, does any of that address your argument about use for fair market value? Does it matter what the size or shape is? Well, I would think that, you know, I mean, obviously certain lots, a residential lot, it depends what you want to build on it, but you have setback requirements and all this. So some size does have a sense of it. For a lake club, I would imagine you want certain access to the lake. You probably want certain areas for at least parking for your club members and things like that. So all those kind of factors would. You argued that to the trial court that the use and the difference use are matters which can be considered in fair market value evaluation of these properties. What was the position of the plaintiffs at trial and response? I remember that they felt like. Did they argue you were wrong and explain why? I think their argument was that under their theory, all of the lots could be used as residential lots. You could build a house on them. And so in that sense, they were all similar. But the leases for the clubs don't allow that. So, you know, that makes them dissimilar in my mind. So I didn't think that the argument was very good. I thought that it was very odd for them to argue like, hey, let's imagine that there's no improvements. Let's imagine, you know, someday somebody could tear down a club. That's not off the wall, right? If you're valuing the land portion, that's what you're supposed to do. Okay, well, what if there were no improvements? How much is the land worth? Now what's the value of the improvements? That's pretty basic. I think that when the assessors look at it, and they see it, it's a house. And so they're not saying just land generally empty. They're saying it's a residential lot. Then why do our tax bills contain a separate section for the land value versus the improvements value? The property tax code requires that. I do not know what the state does with that information. I don't know why, but that's why they do it. It's right in the property tax code. Here's one simple reason. An undeveloped lot, you value the land. Wouldn't you value the land of a developed lot the same way and then just add on the improvements? Yes, but you would take into consideration, you know, it's in the middle of a subdivision there. It's on the lakefront next to all these other houses. It's a house lot. I assume you're arguing also that you would take into consideration the lease restrictions and other unique aspects that would attach to that particular parcel of land. I'll be honest with you. When I looked at this, I was like, how would the assessor walking by here know what the terms of the club, you know what I mean? But what I'm thinking is maybe, but there's no evidence on this. Whoever put these formulas together knew that, and they knew that there's some restrictions on this, so we're going to make it a loan them. But there's no evidence to that. But one of the main things that I bring up, too, this whole idea is we're going to have a uniformity clause claim based only on one component. That doesn't make any sense. The tax burden is on the entire parcel, not one component. And also, if one component is off, overvalued, undervalued, whatever, the other component can offset that. It's the top number. It's the one assessment that a tax bill goes out on, that taxes are paid. That's where the burden comes from. Following up on just the authorities question, it seems to address what you were just mentioning. Is there just a tax on the property, or is it the fair market value? Is it the whole property, or is it divided up into these other components, such as the value of the land and any improvements that are on? Or is it the whole? I mean, how does that work? It's the whole. And it is divided that way by state law. It says you put a number in for non-farm land. You put a number in for non-farm improvements. You add those two together. That's your assessment. But they're independently determined, correct? I mean, it's not like you could say, well, instead of $100,000 for the lot, we're just going to say $1 for the land and $900.  But in the end, it wouldn't matter. It won't, except that you have to defend the method. You do not have to defend the method. You do not have to defend the method. Well, this is a suit about the calculation of the fair market value. Since that has two components, why would you not look at the two components? Well, one of the things is you have to look, again, going back to uniformity clause, what are we looking for? You know, uniform basis or burden of taxation. If you cannot prove because you don't put on any fair market value evidence that you have it under, there is no uniformity clause violation. That's what this case is about. The presumption is, is whatever the assessor put down, that is correct. And the burden, by clearly convincing evidence, is on the tax challenger to show, hey, this assessment is wrong. And here's why. The case also calls it the cornerstone of a uniformity clause case. And it's like a mathematical thing, which is bad for lawyers. But, you know, that's what this is really about. It's just you have to put that evidence on. You can't just say, I pay more taxes than my neighbor. Okay. Let me ask you then, Mr. Benoit, following up on that. Assuming you switched sides here and you were representing the plaintiffs and you wanted to put on a complete case, what's the evidence that you would have presented on their behalf to demonstrate that the assessment was not fair? Well, I think for their own properties, you know, I started out doing some discovery on this case saying, what have you wrote down on forms? What is it? And you try to figure out, is it sold? But the state, and this is the information that was in the Walsh case, they keep track of these sales and they compare them to how these places are assessed and come up with these assessment ratios that courts use to determine whether or not there's a uniformity clause violation. So you could use that kind of data. I think one of these houses actually sold that this case is so old during this thing. But another thing, they had an appraiser, their expert, whatever, and he offered opinions on the law, on leases, on this, on that. How about just, okay, make an appraisal on these lots or two of them. You don't need like a million comparables. I mean, no, but they did. And I'm asking, like, why? Why did you do this? So had you been representing the plaintiffs, that's what you would have done? Yeah. You have 13 plaintiffs. You know, you get somebody to divvy up the cost on that and, okay, what is the number? What are these lots worth? That's how you prove your case. So absent that, you think, absent that information in this record, you think the plaintiffs have failed? They have definitely failed. There's no way to prove these cases unless you have fair market value evidence. Fair market value evidence of, you know, the tax challenger's properties and of the comparables. Otherwise, you cannot come up with these ratios, make the comparison, and determine if there's a unit. You can't determine the evidence. Fair market value ratio you talked about in your brief. Yes. And so here, so if you look at the assessor's number, that number's never going to change. You assess value, and then you know what his fair market value is, times three. So it's that bottom number. The fair market value's got to change. The assessed value's never going to change. Well, it will, but the ratio will never change. It's always going to be a third. Yeah. So they have to show what I call sometimes in the brief, and I apologize, but sometimes it's not, but the true assessment level, you only figure that out when you have the fair market value evidence. And the assessor's assessment, you know, number there, then you get a percentage. Ideally, everybody's percentage is 33 and one-third percent, but that's not the issue either. If you're off that number, that's not a deal in the appointment class. As long as every property's off that number. Yeah, as long as everybody's, and it doesn't have to be right on the, you know, right on the appendix, just close. You know, if they're all close, you're good. So it's really true in this case, close enough where government works? Well, yeah, I guess. In any sense, if there's so much, it couldn't be perfect. But, you know, you've got to be really close. Related to this idea is this idea like the assessor of the county improperly classified property. I don't know if we need to talk about that, but it's the same way. Up in Chicago, they can put different assessment rates on properties. One's industrial, say, one's residential. And they'll put a higher assessment ratio onto the industrial property and make them pay more taxes. But, again, they didn't prove this, you know, this claim that we have this illegal classification system because they never put on fair market value evidence. You have a different formula based on a classification that you've created that doesn't have a statutory basis. We don't have a classification system. You have a different formula for residential versus commercial. We have an evaluation formula for those two, but there's no evidence that that results in anybody bearing, you know, an undue tax burden or a different tax burden or anything. And, again, this whole case turns on their failure, not the whole case, but the main thing here, they cannot prevail here without proving this fair market value evidence so they can show that they bear an undue tax burden. Thank you, counsel. You'll have an opportunity to address us again in rebuttal. Mr. Beeman, you may make your argument, sir, on behalf of the appellee. Thank you very much. Hello, my name is Bruce Beeman. I'm with Walter Beeman Lynch and Dennis in Springfield. The defense has made in their brief to this court six numbered arguments that point as to why they believe our case should fail in front of you. I would like, I'm hoping that you allow me to go through, use about ten minutes of my time to go through and explain why each of those arguments are either based on incorrect premise, have no authority whatsoever to sustain me, or there are two Illinois Supreme Court cases that directly reject the position of the defense. Well, Mr. Beeman, you may certainly argue as you wish, but I would suggest I'm anxious to hear your response to the particular argument just made by Mr. Benoit because, how do I put it? This is a complicated case which is not the norm for certainly me and I suspect my colleagues and I'm struggling to fully understand it and it would be helpful for me if whatever else you say, if you begin by addressing his remarks. Well, okay, I will do that. Thank you, sir. One of his first arguments that he just made in his briefs is that none of the plaintiff's assessments were challenged and there was no evidence of fair market value presented, which he claims ends our case right there. Wasn't there evidence of fair market value presented at the trial level? No, there was not. And is that a position that is not required? It is not required. Why not? Because one of the cases that the defense cited in their brief, Apex Mobile Fuel Company v. Barrett, a 1960 Illinois Supreme Court case, considered the same issue, the uniformity clause issue, and what they said on page 401 of that case is that uniformity in taxation cannot exist without uniformity in the basis of assessment. Let me say that again. They said uniformity in taxation cannot exist without uniformity in the basis of assessment. What if for some reason, because really what you've got here, you're saying there's a different formula for assessment. Two different formulas. Yes, a different formula for assessment, but the injury is it leads to an inaccurate value. On the land, yes. On the land. So if we don't have a measure of the inaccurate value and you're just correcting the formula, there's really nothing that tells us that your request for damages is accurate. Well, it is because what we have done is substitute what they call the commercial formula, take away our residential formula, and use the commercial formula that they're using on the properties that they value in the formula. You're totally attacking their premise. Correct. And not attacking their conclusion. Isn't it the conclusion that matters? Meaning your assessment is wrong. It doesn't reflect the market value of your properties, and that's what you have not attacked. Well, and I have not attacked the market value because you don't have to. If that wasn't clear from Apex case, 37 years later, the Walsh case comes along. In the Walsh case versus Property Tax Appeal Board, the Supreme Court found a uniformity clause violation despite the fact that the owners of the Herndon house, which was the house at issue, never presented any market value of that property. And if you read the Walsh case, you see that's true. It's not required. The defense bases their main premise on You have to have market value to win a uniformity case. The problem is the Walsh case decided there was a uniformity violation in a case where their own market value was never even entered into evidence. It was the basis of the assessment was different, wasn't enough. And that is the lesson of Apex and Walsh. Let me ask you the same question. I think the first question I asked Mr. Benoit, which is, with regard to the properties in question, the residential properties around Lake Springfield and the other boat club properties, can the taxing authority in considering these properties for tax purposes take into account the different uses? Not of the land. Not what? According to the testimony in this case of the assessors, they assess the land as if it is vacant with no use, no building. That's all the evidence in this case. Let me go back to my first question. Leave aside what the assessors said. What about this isn't just the general counsel? Can the difference in use of these properties be taken into consideration by the taxing authority? I don't think so. And I don't think so because it's all non-farm land. It's all R1 zone properties. And if they assess them differently on a different basis, they're assessing like properties using a different basis which both Apex and Walsh says you cannot do. Is property routinely assessed, vacant property routinely assessed, based on its highest and best use, regardless of whether that was its use at the time? Yes, I believe that's correct. I believe that's correct. He also mentioned the size of the lots. There is nothing similar about these formulas that were created by who knows who. No one knows why, how, or when they were calculated. But one thing is similar in these formulas, and that is the larger the lot, the more valuable the lot. That's true in both formulas. So the idea that a half acre residential lot is worth more than a ten acre pub lot is ludicrous because their own formulas that they go by say the opposite. They say the bigger the lot, the more valuable it is. They go by square foot on the commercial lots. So Walsh, in the Walsh case, they talk about mass appraisal method. And they mention that the application of that in Casserole County was terrible. It resulted in vast discrepancies of value. But that is not the basis on which Walsh was decided. Didn't Walsh also say that you have the burden as plaintiff of proving a disparity in taxation by clarity convincing evidence? Yes, there are other cases of that. But Walsh, they mentioned the mass appraisal method, but it wasn't decided on that basis. In Walsh, they summarized the issue of the case. And what they said was, and I want to quote this from the case. In this case, we consider the practice of calculating assessed values for like properties on different bases to wit as a percentage of recent sales price as opposed to the so-called mass appraisal method. So that's what they decided on. Well, Walsh also said this, that to prove a disparity in taxation, plaintiffs must prove that the properties and the recreational club properties reach value at different proportions of their fair cash value. Doesn't that mean we've got to have evidence of fair cash value? No, it means you have to have evidence that one was taxed at a higher, one party is paying more proportion. Let me give you an analogy. It sums up, I think, the defendant's position upon their question. Let's say instead of an assessment argument, we were in a football game today. And the rules were, in the first half, both parties are awarded six points for each touchdown they make. But in the second half of this football game, one party is awarded six points for a touchdown, and the other party is awarded 21 points for a touchdown. Well, the defendant is saying, hey, don't pay attention to the basis for how we're going to argue this. Just look at the final score. That'll tell you what you want to do. Here's my problem. I'm a literalist. And what I just read you is a quote from Walsh. To prove a disparity in taxation, plaintiffs must prove their properties and the recreational club properties which value to different proportions of their fair cash value. What is your argument to me in response, essentially asking us to disregard that statement? No, no, I'm not. Here's what happens. Because the plaintiff's properties are valued by the foreigner at a grossly higher amount, when they total the properties, are we paying a higher percentage of the tax burden than the commercial properties that are taxed so much lower? But we can't know that unless we know the valuations are wrong. Well, you do. We know they're different. We don't know if they're wrong. How can you have 21 points for one touchdown and six points for another touchdown, add the points up and say, well, that makes no difference? It obviously makes a difference, and that's what was done here. Unless they didn't score anyway, and so we don't know if it affected the end result. We don't know whether or how, and certainly how much, this affected the end result. And you're asking for, and you got, a damages award on that kind of back-of-the-envelope math. Well, the building improvements are by statute presumed valid and less challenged. No one challenged those. So those building portions of the assessment are correct. The only thing that was challenged is the land values, and we showed those are skewed wildly against the residents. So if the building portions of the assessment are correct, as the law provides, then if you alter the land values so that residents pay Go back to the football game. Wouldn't we have to say, well, how many times did they score, and what should their score have been? Not just the formula wasn't fair. We'd have to know how much it cost them to count the points that way. And I feel like here, we don't know the final, even imbalanced score. Well, I think we do, and here's why. We substituted to keep everything equal and uniform. We substituted the building values are presumed correct. We substituted the land values for the commercials. And so when we added that, buildings is presumed valid. That's okay. So we just do the same thing. But you're cutting out which formula is right. You've picked the one that you like. You think they shouldn't have it, which is fine on a uniformity argument. But for your damages, don't we have to know which formula was right with respect to the valuation of your property? Because just them getting a break doesn't necessarily take it out of your pocket. Well, that's contrary to the holding in Walsh, because in Walsh, they quoted from an old case, from People's Gas, Light, and Coke case, a 1918 case that was quoted in Walsh, and they say one person cannot be compelled to pay a greater proportion of taxes than another, and where assessors have disregarded the injunction of the law and made an assessment of property far below its real cash value, their misconduct must follow the principle of uniformity in their assessments, and all persons must be made of the same proportional value. Well, they're not taxing us at the same proportional value because they have the remedy and the reason. The remedy could be to raise the taxes on the other. Pardon? The remedy then could be to raise the taxes on the other. That's too late. These are 2016 taxes. You can't do that. That bus is sailed. So you can't do that. Now, I wanted to touch on another thing that he said, that our defense argument was a uniformity clause claim cannot be based solely on the land portion. That was one of the arguments he just made, and made his brief. In his brief, he cited five legal authorities for that position. None of them, none of them stand for that proposition. Not one. But one does say that you can base your uniformity clause based upon just the land. That is Turner versus Bell Chevrolet. So the idea that we can't base it on just the land is he has no authority for that position, none. In fact, he cited authority that you can. The values, the amount of damages, we have calculated down to the penny. Because what we've done by leaving the building assessment as correct, as the law says, and just making equal and uniform the land assessment, if you look at Exhibits E-549 through E-561, we have calculated the damage each person sustained because they were subjected to a higher formula. And it works out down to the penny. All of these damages were placed into evidence. No objection was made to any of these damage calculations. They're all admitted without objection, and they never presented any evidence of their own. So did we present how we were damaged? Yes, we did. And that evidence wasn't even objected to. Now we get it to the appellate court, and they want to object to it. I didn't hear you objecting to it. I heard the argument that it doesn't matter. I don't see how it doesn't matter. If you're the residential taxpayer, to say it doesn't matter is ludicrous. Now, another defense argument they made is the lake club partials, either with or without improvements, are not comparable to plaintiff's partials. What in this case we're looking at is lake lots. We're looking at lake lots on the same lake. We're looking at lake lots in the same taxing districts. The lake lots are all located on the most valuable part of the lake that we're comparing. The assessors in the lake lots. Where is that in the record? Pardon? Where is that in the record, that that's the most valuable part of the lake? Well, it's in my brief. I don't have that page number. In my brief, I had all of the what I call bad testimony of the assessors, and that's why I didn't have a citation to the exact page. The assessors in the lake. Can I interrupt just a second? So you're saying that because these are all in the best part of the lake, that those lots cannot be different, and I think opposing counsel made the argument that when the leases, I think he was speculating, but that when the leases were set up, the ones that were chosen to be recreational clubs and so on versus the residential were done so because there were some differences in these lots. I mean, there's differences in every lot. There's no two lots on the lake the same. So they're all different in size or location. But there's residential lots located directly adjacent to a club lot, and the club lots, the assessors said themselves in testimony, which is again in my brief with page number reference, that they should all be assessed as if they were vacant lots. So that's what they're doing. Now they're coming here and telling you something different, but in practice what they have done is assess them all as vacant lots. Are they comparable if the club lots have a restriction that prevents their use in the same way that the residential lots would be used? Well, if that was true, yes, but it isn't true. Because if you read the leases, it already talks about the restrictions. It says that you may build a club house. You don't have to, and they all say you can have a family residence on there and have a little family there. So Mr. Link, who's here today, could walk down the Centennial Building and incorporate the John R. Link book club. Build a house, and his club bylaws could say, well, my family are the only members of this club. There's nothing in any of the leases that would stop that from happening. The leases just suggest that you may build a club house, but they don't require clubbies in the clubhouse. They don't even require that. They just say you can have a single family residence on there and the custodian, which is everyone who has a leased lease is a custodian. The custodian can live in the house. Although the defense thinks that that's a big argument, it really isn't. If you read the leases, there's nothing to stop someone from doing exactly that. If we're going to speculate, I think they already have, but that's another thing. The only expert to testify in this case, and this expert has been hired by this court to write an appraisal evaluation for eminent domain. So he's well thought of. He's not some hired gun guy. This court hired him? Yes. How and when did we hire experts? If you look at his CV, which is also in my record and referred to by page number, you'll see that this court hired him to do that for eminent domain cases. Go ahead. The only expert in this case has testified. These are similar in kind and character and like kind, same weight. The lots are comparable. What is his name, the expert? You wouldn't ask me that. Your time is up, counsel. Thank you for your argument. There will be an opportunity for Mr. Benoit now to make the final argument. Thank you. I would say, is there any more questions before I close? Okay. Just to respond to the point about Mr. Link could form a club and go down there. No, that's not going to happen. The lease says that even as to who the club is, the city has the authority to look at it and say, is this a legitimate club that we want out there? So that can happen. Those club leases do not allow residence to be built in the manner that the plaintiffs are suggesting. In closing, the main thing is the fair market value. The plaintiffs chose to base their case solely on the existence of the two non-farm land valuation methods. They resisted discovery on fair market value. Their motions and pleadings said they were not going to, that assessments, they were not challenging them. Now they're saying they are. Consistent with their claims, no fair market value evidence presented. The plaintiffs bear the burden of proving every disputed fact here by clear and convincing evidence. Counsel, I asked Mr. Meadman about the Walls case and some of the language therein. You heard his explanation. Do you disagree? If so, explain why. Yes, and I think that the circuit court also basically came to the conclusion that if you show two different formulas, then under Walsh, per se, you have proven a uniformity clause violation. That is a misreading of Walsh. In Walsh, it was the application of the second valuation formula on the Herget house, and I quote, resulting in plaintiffs arbitrarily paying property taxes on a greater percentage of their property's fair cash value than do other property owners that caused the court to find a uniformity clause violation. The court specifically said, after that last quote, this violates the uniformity clause. Prohibition against taxing properties at different proportions of their true fair cash value. Further quoting, to hold otherwise would sanction assessed valuations on different proportions of like properties in direct contravention of uniformity clause. Counsel, whenever anybody challenges their tax assessment, it's always focused on what did you value my house at, right? Yes. So that's an area where it would be that bottom line valuation number that carries the day. Isn't a proportionality challenge by its nature different? Isn't it looking at more than just the value? Otherwise, what does the proportionality clause add if all we're looking at is the fair market value? Well, you're looking at uniformity in proportion to the comparables. So if you just walk in on just yours, I mean, you could go in and say... That's how we do it, comparables, right? Sometimes, though, it's just I didn't own my own house. It's sale. I just bought the house, and I kind of got a good deal of loan. So then when the bill comes, I go see the assessor and say, well, this is what I just paid for this. Why isn't the challenge to the formula you have adopted irrelevant to a proportionality challenge in a way different than the typical assessment context? Why wouldn't we look at what the neighbor's formula is? Why would that not be part of a proportionality challenge? I think it's fine to look at it, and it's fine that that might put a question in your mind, but this is a case, you know, you're challenging your taxes in circuit court, in state court. This is the uniformity clause. The rule is you figure out what is the fair market value of all the properties at issue, how much would they assess, you compare these, that's it. That's the rule for these type of cases. I don't see that as being all that different than an assessment challenge. So what is the proportionality clause adding to our conversation? If they both operate the same, then nothing, I guess. It's not a great place to end up. To take a constitutional provision and say it's really, it's an empty promise. Well, I don't think it is an empty promise. I mean, had he proven, or the claimants proven, that their assessment ratio was significantly higher than the comparables, then that would have been the basis for them to get a tax refund. You would have never had to mention the proportionality clause to win that case. All you have to do is show that your ending value is out of proportion to what the neighbors think. Yeah, but this case, if this is in the record, the claimants started out this case at the first step, filling out the forms, and they put what's the basis for this, something about values, and it's not applicable is what they say. They've always been in the mindset that what the value of their property is has nothing to do with this case. And that's just, that's just not how you prevail with the reforming clause? To the flip side, you're saying that that's all there is on this case? No. It's all about the assessed value. Well, it's the, not all about the assessed value, all about the fair market value and the assessment above that. That formula, that's what this case is all about. But there's other things to consider as far as are the properties comparable, are they in the same tax district, you know, things along those lines. Mr. Bidwell, your time is up. I want to give you an opportunity to fully respond to Justice Doherty. I think you have, so thank you. Thank you, counsel. And the court will take this matter under advisement. It will be in recess for a few moments.